UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
R&D HOTEL, LLC,

                             Plaintiff,

              -against-                                          15-cv-08359 (LAK)


McDONALD'S USA, LLC,

                             Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### MEMORANDUM OPINION


                     Appearances:

                                    Arun Chandra
                                    CHANDRA LAW OFFICES, P.C.
                                    *Attorneys for Plaintiff*

                                    Thomas J. Goodwin
                                    MCCARTER & ENGLISH, LLP
                                    *Attorneys for Defendant*



LEWIS A. KAPLAN, *District Judge.*

              This landlord-tenant dispute is before the Court on the motion of McDonald's USA,

LLC ("McDonald's"), the tenant, to dismiss the breach of contract dispute brought by R&D Hotel,

LLC ("R&D"). The dispute concerns whether R&D timely obtained "Landlord Approvals," as that

term is defined in the parties' ground lease (the "Lease" or "Agreement"), required to operate a

McDonald's restaurant on R&D's property.

2

*Facts*

R&D owned a parcel of real estate in Poughkeepsie, New York, on which McDonald's contemplated developing one of its familiar food establishments. The parties therefore executed the Lease on or about November 28, 2012.[1]

Article 4A of the Lease required R&D to "obtain the approval, if necessary, of all public and governmental authorities as to matters relating to zoning, subdivision, lot splits, lot ties, replats or similar requirements for use of the Premises as a McDonald's restaurant."[2]  It further provided that if R&D had "not obtained all approvals described in this Article 4A (the 'Landlord Approvals') on or before 270 days after the Lease Commencement Date, Tenant may, at its option, either (i) terminate this Lease and declare this Lease null and void and of no further force and effect, or (ii) attempt to obtain the Landlord Approvals itself at Landlord's cost and expense."[3]

The heart of this dispute is the meaning of the term "Landlord Approvals." R&D contends that "Landlord Approvals" refers to initial agency approvals ("Initial Approvals"), regardless of whether those approvals potentially could be appealed.  McDonald's argues, by contrast, that "Landlord Approvals" refers to final, non-appealable approvals ("Final Approvals"). Although the Lease does not state explicitly whether the "Landlord Approvals" R&D was required to obtain within 270 days of the Lease Commencement Date were Initial or Final Approvals, the language surrounding that term provides some clues as to the parties' intent.

---

[1] Am. Compl. [DI 7] ¶ 7.

[2] Lease [DI 7-1] at 4.

[3] *Id.* (underscore and bold omitted).

Two-hundred and seventy days after the Lease Commencement Date was August 25, 2013.

First, Article 4A defines the term "Approval Date" as "[t]he date Landlord obtains all final, non-appealable approvals described in this Article 4A."[4]

Second, Article 4A explains the circumstances in which, if R&D fails to obtain the Landlord Approvals, McDonald's can attempt to obtain the Landlord Approvals on its own at R&D's expense:[5]

> "If Tenant is successful in obtaining final, non-appealable Landlord Approvals, then Landlord will reimburse Tenant for its costs and expenses in obtaining final, non-appealable Landlord Approvals (the "Tenant Costs") on or before 30 days after receiving an [sic] invoice therefor.  If Landlord fails to pay the Tenant Costs to Tenant on or before the expiration of such 30-day period, then Tenant will be entitled to recoup the Tenant Costs by deducting the Tenant Costs from rent thereafter accruing.  If Tenant exercises its right to obtain the Landlord Approvals under this provision, Tenant will have a period of 180 days to do so and if Tenant fails to obtain the Landlord Approvals prior to the expiration of such 180-day period, either Landlord or Tenant will be entitled to terminate this Lease . . . ."

R&D alleges that it fulfilled its obligation to obtain all Landlord Approvals by July 8, 2013 – over a month before the 270-day deadline – because it secured all Initial Approvals by that date, although some were being appealed by a third party.[6]  Nonetheless, on or about August 25, 2013, the parties executed a First Amendment to the Ground Lease (the "Amendment") that extended the "Landlord Approvals" deadline from 270 days to 450 days after the Lease Commencement Date.[7]  The Amendment did not otherwise alter the Lease.

---

[4]

Id. (underscore omitted).

[5]

Id. at 4-5 (bold omitted).

[6]

Am. Compl. ¶ 9.

[7]

Amendment [DI 7-2] ¶ 2.

This extension gave R&D until February 21, 2014 to secure all Landlord Approvals.

4

R&D ultimately failed to obtain all Final Approvals by the amended 450-day deadline, although, as explained above, it allegedly obtained all Initial Approvals long before that deadline.[8] On April 15, 2015, McDonald's notified R&D of its intent to terminate the Lease.[9] R&D responded by filing this breach of contract claim.[10]

McDonald's now moves to dismiss pursuant to Rule 12(b)(6).

## Discussion

*Legal Standard*

A court evaluating a motion to dismiss a breach of contract claim "is 'not constrained to accept the allegations of the complaint in respect of the construction of the agreement.'"[11] Rather, a court may resolve a breach of contract claim "by . . . Rule 12(b)(6) dismissal" if "the parties' intent is unambiguously conveyed by the plain meaning of the agreements."[12] A contract is unambiguous under New York law[13] if "the language it uses has a definite and precise meaning, as to which there

---

[8]    *See* Am. Compl. ¶ 9; Def.'s Reply Br. at 2.

[9]    Am. Compl. ¶ 10.

[10]   *Id.* ¶ 11; ¶¶ 15-17.

[11]   *Oppenheimer & Co., Inc. v. Trans Energy, Inc.*, 946 F. Supp. 2d 343, 348 (S.D.N.Y. 2013) (alteration omitted) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

[12]   *Crane Co. v. Coltec Indus., Inc*, 171 F.3d 733, 737 (2d Cir. 1999) (quotation marks omitted).

[13]   The parties appear to agree that New York contract law applies. *See* Pl.'s Opp. Br. [DI 16] at 3-4 (applying New York contract law); Def.'s Reply Br. [DI 17] (not disputing applicability of New York contract law); *see also Postlewiate v. McGraw-Hill, Inc.*, 411

5

is no reasonable basis for a difference of opinion."[14]  But "[t]he mere fact that the Parties disagree on the proper interpretation of a contract does not render the contractual language ambiguous."[15] Further, "[w]hen determining whether a contract is ambiguous, it is important for the court to read the integrated agreement as a whole.  If the document as a whole makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the agreement."[16]

*"Landlord Approvals" Unambiguously Refers to Final Approvals*

The clearest evidence of the parties' intent can be discerned from the Lease Amendment.  The one-page Amendment did one thing only – extend the deadline by which R&D was required to obtain the "Landlord Approvals" from 270 days to 450 days.  But R&D alleges, and McDonald's does not dispute, that R&D already had obtained all Initial Approvals before both the original 270-day deadline and the date the Amendment was executed.[17]  If the term "Landlord Approvals" referred to Initial Approvals, as R&D argues, then the Amendment would have been meaningless because it would have served only to extend a deadline already met.  And it is a basic

---

F.3d 63, 67 (2d Cir. 2005) (applying New York substantive contract law when the parties did not dispute its applicability).

[14]     *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011).

[15]     *Vetromile v. JPI Partners, LLC*, 706 F. Supp. 2d 442, 447 (S.D.N.Y. 2010); *see also Bank of N.Y. Mellon v. WMC Mortg., LLC*, 136 A.D.3d 1, 9, 22 N.Y.S.3d 3, 7-8 (1st Dep't 2015) ("A contract is not rendered ambiguous just because one of the parties attaches a different, subjective meaning to one of its terms.") (quotation marks and alteration omitted).

[16]     *Lockheed Martin*, 639 F.3d at 69 (quotation marks, citation, and alteration omitted).

[17]     *See* Am. Compl. ¶ 9; Def.'s Reply Br. at 2; Amendment (executed August 25, 2013).

tenant of contract law that "courts should avoid interpretations that render contract terms meaningless or superfluous."[18]  The only logical reading of the Amendment is that it extended the time for R&D to obtain Final Approvals, which it concededly had not obtained by the original 270-day deadline and Amendment execution date.[19]  Thus, it is clear when reading the integrated agreement – including the Amendment – as a whole that the "Landlord Approvals" which R&D was required to obtain under the Lease were Final Approvals, not Initial Approvals.

This view is confirmed by provisions of the Lease in which "Landlord Approvals" are referred to unambiguously as "final, non-appealable."  For example, "Approval Date" is defined in Article 4A as the date R&D "obtains all final, non-appealable approvals *described in this Article 4A.*"[20]  But the "Landlord Approvals" at issue here are the only approvals "described in . . . Article 4A."[21]  Thus, they must be "final [and] non-appealable."

The Lease, moreover, appears also to use the phrases "Landlord Approvals" and "final, non-appealable Landlord Approvals" interchangeably, further suggesting that both terms refer to Final Approvals.  This is evident from the provision of Article 4A explaining that if R&D fails to obtain the "Landlord Approvals" by the 270-day deadline, then McDonald's may attempt to

---

18

      *Meehancombs Global Credit Opportunities Master Fund, LP v. Caesars Entm't Corp.*, ---
F. Supp. 3d ---, 2015 WL 9478240, at *6 (S.D.N.Y. 2015).

19

      *See* Am. Compl. ¶ 9.

20

      Lease at 4 (emphasis added) (underscore omitted).

21

      The "Landlord Approvals" are described in the first sentence of Article 4A: "Landlord will
. . . obtain the approval, if necessary, of all public and governmental authorities as to all
matters relating to zoning, subdivision, lot splits, lot ties, replats or similar requirements for
use of the Premises as a McDonald's restaurant in accordance with Tenant's plans and
specifications . . . .").  *Id.*

7

obtain the approvals itself at R&D's expense.  The provision states first that "[i]f Tenant is successful in obtaining the final, non-appealable Landlord Approvals, then Landlord will reimburse Tenant for its costs and expenses in obtaining the final, non-appealable Landlord Approvals."  It goes on to explain that "[i]f Tenant exercises its right to obtain *the Landlord Approvals under this provision*, Tenant will have a period of 180 days to do so."[22]  The phrase "the Landlord Approvals under this provision" refers to the "final, non-appealable Landlord Approvals" referenced earlier in the provision, despite the fact that the descriptor "final, non-appealable" was not repeated.  Thus, both phrases were used interchangeably to refer to Final Approvals.

In the last analysis, it is clear from reading the entire integrated agreement that the parties intended the term "Landlord Approvals" to refer to Final Approvals.  Accordingly, R&D failed to fulfill its obligations under the Lease by failing to secure all Final Approvals by the extended 450-day deadline, and McDonald's therefore was entitled to terminate the Lease.  R&D's breach of contract claim must be dismissed.

---

[22]    *Id.* (emphasis added).

8

*Conclusion*

The motion of defendant McDonald's to dismiss the complaint [DI 12] is granted.

The Clerk shall enter judgment and close the case.


SO ORDERED.

Dated:     July 12, 2016


_____
Lewis A. Kaplan
United States District Judge